## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 12 2019, 9:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| J.S. | Curtis T. Hill, Jr. |
| Erie, Pennsylvania | Attorney General of Indiana |
| | Jesse R. Drum |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.S., | March 12, 2019 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 18A-PC-1728 |
| v. | Appeal from the Delaware Circuit Court |
| State of Indiana, | The Honorable Thomas A. Cannon, Jr., Judge |
| *Appellee-Respondent* | Trial Court Cause No. 18C05-1701-PC-3 |

**Baker, Judge.**

[1] J.S. appeals the post-conviction court's order denying his petition for post-conviction relief. J.S. argues that the post-conviction court erroneously determined that he did not receive the ineffective assistance of appellate counsel; he also raises a freestanding claim of error regarding this Court's decision in his direct appeal. Finding no error, we affirm.

# Facts

[2] This Court described the underlying facts in J.S.'s direct appeal:

> In 2013, J.S. and A.B. were both graduate students at Ball State University. While enrolled at Ball State, both J.S. and A.B. resided in Muncie. After being introduced by a mutual friend, J.S. and A.B. entered into a "boyfriend and girlfriend" relationship in July of 2013. A.B. described this relationship as a monogamous, intimate relationship. This relationship continued while A.B. completed an internship in Fishers during the months of August, September, and October. After completing her internship, A.B. returned to Muncie in the beginning of November.
>
> Upon returning to Muncie, A.B. began residing with J.S. in his apartment. A.B. moved all of the belongings which she needed to live into J.S.'s apartment. While residing in the apartment with J.S., A.B. helped with domestic functions such as cooking and cleaning. A.B. and J.S. shared the same bed and engaged in sexual relations. A.B. also completed a change of address and listed J.S.'s address as the address on her driver's license.
>
> A.B. continued to reside with J.S. in his apartment until she temporarily relocated to Houston for an internship in January of

2014. J.S. and A.B. planned to again cohabitate after A.B. returned from her internship in Houston.

A.B. and J.S. began to encounter problems with their relationship while A.B. was temporarily in Houston. A.B. attributed these problems, at least in part, to the distance between them. In March of 2014, J.S. flew to Houston to help A.B. drive back to Muncie. Once in Houston, J.S. and A.B. began to argue and at one point "broke[ ] up." They then drove back to Muncie together.

Once back in Muncie, A.B. and J.S. continued to argue. As a result of the continuing argument, A.B. decided to move out of J.S.'s apartment. However, before she did so, during the evening hours of March 30, 2014, J.S. became physical with A.B.

J.S., who outweighed A.B. by approximately fifty to sixty pounds, grabbed A.B., read a text on A.B.'s cellular phone from A.B.'s mother, and "threw [A.B.] down onto the bed." J.S. told A.B. "if you want to fight, we'll fight." J.S. then straddled A.B., who began trying to get away from J.S. J.S. placed his hands around A.B.'s neck. A.B. placed her hands on J.S.'s wrists and, in an attempt to get him to stop, "squeeze[ed] his arms, sticking [her] nails into him." A.B. was unable to free herself from J.S.

During their struggle, A.B. pleaded with J.S. to stop, telling him that he was hurting her. A.B. became scared after J.S. indicated that he "was going to kill" her. J.S. continued choking A.B. until she lost consciousness.

After regaining consciousness, A.B. fled J.S.'s apartment. A.B. made her way to a nearby apartment. The resident of that apartment notified the police who came to the scene and

documented A.B.'s demeanor and injuries. A.B. was subsequently transported away from the scene by police.

On June 13, 2014, Appellee–Plaintiff the State of Indiana (the "State") charged J.S. with Class D felony strangulation, Class A misdemeanor domestic battery, and Class D felony criminal confinement. Following a three-day jury trial, the jury found J.S. guilty of Class A misdemeanor domestic battery and not guilty of Class D felony strangulation and Class D felony criminal confinement. The trial court subsequently imposed a six-month suspended sentence. . . .

*J.S. v. State*, No. 18A05-1505-CR-448, at *1-*2 (Ind. Ct. App. Dec. 22, 2015) (internal citations omitted), *trans. denied*.

[3] J.S. filed a direct appeal. The two arguments raised by appellate counsel were that (1) the domestic battery statute was unconstitutionally vague as applied to J.S. and (2) there was insufficient evidence to support his conviction. Appellate counsel did not raise a double jeopardy challenge because J.S. was only convicted of one offense, and she did not allege prosecutorial misconduct because she did not see any when she examined the record. This Court affirmed, finding that the statute was not unconstitutionally vague and that there was sufficient evidence. *Id.* at *3-*4. J.S.'s appellate counsel filed a petition to transfer. After she filed that petition, J.S. demanded that she withdraw, which she did. He then filed a pro se petition to transfer, which our Supreme Court denied.

[4] On January 11, 2017, J.S. filed a petition for post-conviction relief, arguing that he had received the ineffective assistance of appellate counsel. Following

an evidentiary hearing, the trial court denied J.S.'s petition on May 1, 2018.
J.S. now appeals.

# Discussion and Decision

## I. Standard of Review

[5] The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

[6] J.S.'s primary argument on appeal is that the post-conviction court erroneously determined that he did not receive the ineffective assistance of

appellate counsel. To establish ineffective assistance of appellate counsel, the petitioner must show that (1) appellate counsel was deficient in his or her performance, *and* (2) the deficiency resulted in prejudice. *Id.* at 269. Failure to satisfy either prong will cause the claim to fail. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). To satisfy the first prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness, committing errors so egregious that the defendant did not have the counsel guaranteed by the Constitution. *Hollowell*, 19 N.E.3d at 269. To satisfy the second prong, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

## II.  Assistance of Appellate Counsel

J.S. raises multiple arguments, which we consolidate and restate as follows: (1) counsel was ineffective in the manner in which she presented her arguments on appeal; (2) counsel was ineffective for failing to raise claims of prosecutorial misconduct; and (3) counsel was ineffective for failing to object to the State's brief on direct appeal.[1]

---

[1] J.S. also argues that appellate counsel should have raised a double jeopardy claim. Given that J.S. was only convicted of one offense, it is readily apparent that there is no basis for a double jeopardy argument. It is true that double jeopardy may be an issue in "cases in which there has been an acquittal on one charge and retrial on another charge after a hung jury." *Garrett v. State*, 992 N.E.2d 710, 714 (Ind. 2013). Here, however, J.S. was convicted of one charge and acquitted of two others; therefore, the *Garrett* scenario is not applicable. J.S. was only put in jeopardy—the risk of trial and conviction—once. Therefore, appellate counsel was not ineffective on this basis.

# A. Arguments Raised on Direct Appeal

J.S. first argues that appellate counsel was deficient in the way in which she presented the arguments regarding the sufficiency of the evidence supporting his conviction and the constitutionality of the domestic battery statute.

## 1. Sufficiency of the Evidence

To convict J.S. of Class A misdemeanor domestic battery, the State was required to prove beyond a reasonable doubt that he knowingly and intentionally touched A.B. in a rude, insolent, or angry manner, resulting in bodily injury, and that A.B. is or was living as his spouse. Ind. Code § 35-42-2-1.3.

In arguing that the evidence was insufficient to support J.S.'s domestic battery conviction, appellate counsel first cited the correct standard of review and then noted correctly that the State was required to prove beyond a reasonable doubt that J.S. and A.B. had been living as if they were spouses. Appellant's Br. on Direct Appeal p. 16-17. To make that case, the State was required to address the following factors:

> (1)  the duration of the relationship;
> (2)  the frequency of contact;
> (3)  the financial interdependence;
> (4)  whether the two (2) individuals are raising children together;
> (5)  whether the two (2) individuals have engaged in tasks directed toward maintaining a common household; and
> (6)  other factors the court considers relevant.

I.C. § 35-42-2-1.3(c). Appellate counsel argued that "the only operative facts which were used to establish that [A.B.] and Mr. J.S. had previously been 'living as if a spouse' of the other were that they had dated and that they had an intimate sexual relationship." Appellant's Br. on Direct Appeal p. 17.

[11] It is true that appellate counsel could have elaborated on this argument, but we find that even if she had, we would have affirmed the conviction. This Court found the following evidence supported the conclusion that J.S. and A.B. had been living as if spouses:

> The record reveals that J.S. and A.B., both students at Ball State University, had resided together in J.S.'s apartment for nearly three months before A.B. temporarily relocated to Houston for an internship. They had engaged in a "boyfriend and girlfriend" relationship for several months before residing together. While residing together in J.S.'s apartment, A.B. moved her belongings into the apartment and helped with domestic functions such as cooking and cleaning. In addition, A.B. and J.S. shared the same bed and engaged in sexual relations. A.B. also completed a change of address and listed J.S.'s address as the address on her driver's license. J.S. and A.B. also planned to cohabitate after A.B. returned from her internship in Houston.

*J.S.*, No. 18A05-1505-CR-448, at *3 (internal citation omitted). We find that even if appellate counsel had elaborated on this argument, it would have been to no avail. In other words, J.S. cannot establish prejudice on this basis.

[12] J.S. contends that appellate counsel should have also challenged the sufficiency of the evidence supporting the other elements of the domestic

battery statute. We disagree that any arguments in this regard would have changed the result. The State presented overwhelming evidence that J.S. battered and injured A.B. Specifically, A.B. testified that he threw her on the bed, straddled her, put his hands around her neck, and squeezed until she lost consciousness. She stated that when she regained consciousness, pain was radiating from her head and neck and that it hurt to swallow and talk. Police officers and a physician corroborated her testimony by testifying about her many injuries, including redness, fingerprints on her neck, red eyes, a raspy voice, and difficulty swallowing.[2] Given that this evidence readily supports the jury's conclusion that J.S. touched A.B. in a rude, insolent, or angry manner, causing bodily injury, J.S.'s claim of ineffective assistance of appellate counsel based on counsel's failure to make an argument in this regard must fail.

## 2. Constitutionality of Domestic Battery Statute

[13]    J.S. also argues that his appellate counsel was deficient in the way in which she argued that the domestic battery statute was unconstitutional. Before 2003, the statute did not define "living as if a spouse." I.C. § 35-42-2-1.3 (2002). After this Court found that the statute was unconstitutionally vague as applied

---

[2] To the extent that J.S. argues that counsel should have contended that A.B.'s testimony was incredibly dubious, we note that the rule of incredible dubiosity applies only when a sole witness testifies. *Carter v. State*, 31 N.E.3d 17, 30-31 (Ind. Ct. App. 2015). Here, A.B.'s testimony was corroborated in relevant part by law enforcement officers and medical personnel. Therefore, under no circumstances would A.B.'s testimony have been found to be incredibly dubious.

to the defendant in *Vaughn v. State*, 782 N.E.2d 417, 420-21 (Ind. Ct. App. 2003), the General Assembly amended the statute. The version of the statute in effect at the time J.S. committed his crime provided that the factors set forth above must be considered in determining whether a person is or was living as a spouse of another individual. I.C. § 35-42-2-1.3(c).

[14] In J.S.'s direct appeal, appellate counsel argued that the version of the statute in effect at the time he committed his crime was unconstitutionally vague as applied to him. *See* Appellant's Br. on Direct Appeal p. 15-16.[3] She directed this Court's attention to the following facts in the record in support of the argument:

> Here, Mr. J.S. was the only person on the lease to the apartment at Anthony Apartments. He paid the rent and utilities. [A.B.] did not have a key to the apartment. She did not contribute financially to the household. The parties had separate checking and savings accounts. [A.B.] had been living in Houston, Texas from the beginning of January until the end of March 2014. Prior to that, she had lived in Carmel, Indiana and North Carolina. The parties had been dating for only a short period of time.
>
> The only operative facts which were used to establish that [A.B.] and Mr. J.S. had previously been "living as if a spouse" of the other were that they had dated and that they had an intimate sexual relationship. It is not enough that two individuals have dated and those individuals had a sexual relationship during that

---

[3] J.S. claims that counsel based her argument on the prior version of the statute, but it is apparent that he is wrong, inasmuch as the brief discusses the factors listed above. Appellant's Br. on Direct Appeal p. 15-16.

time. The Court found in *Vaughn v. State*, 782 N.E2d 417 (Ind. [Ct.] App. 2003) that something more than living together and having a sexual relationship is required to establish individuals are living together as spouses. At the most, [A.B.] and Mr. J.S. could have "lived together" for only a matter of days due to their internships and travels during winter break.

Therefore, the statute as it applies to Mr. J.S. is unconstitutionally vague and his conviction should be vacated.

*Id.* at 16. While the argument was not successful, we find that appellate counsel did the best she could with the record before her. Given the facts in the record clearly supporting a conclusion that J.S. and A.B. were living as if spouses, as well as the heavy burden to carry when arguing that a statute is unconstitutional, we find that appellate counsel was not deficient in the way in which she presented this argument.

## B. Prosecutorial Misconduct

Next, J.S. argues that appellate counsel should have raised multiple claims of prosecutorial misconduct. Initially, we note that no prosecutorial misconduct objections were raised at trial. As a result, to succeed with such a claim on direct appeal would require showing fundamental error. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). Specifically, he would have had to show "a blatant violation of basic principles, [that] the harm or potential for harm is substantial, and [that] the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). Under these circumstances, appellate counsel reasonably concluded as a strategic decision

that the likelihood of success on appeal was so slim that it would have been futile to make the argument. That said, we will address each of J.S.'s contentions specifically.

## 1. *Doyle* Violation

[16] J.S. testified at his trial. At several points during his testimony, the State questioned him about his decision to decline to participate in a university review board hearing. Direct Appeal Tr. Vol. III p. 240-45; *see also id.* at Vol. III p. 82 (emphasizing in closing arguments, "If it's nothing more than a shove, why not tell the review board? Why not stand on the table and shout that's what happened? But, he chose not to."). J.S. contends that by pursuing this line of argument, the State violated his constitutional rights. Specifically, he argues that the prosecutor committed misconduct by impeaching J.S. with his silence at the university review board hearing.

[17] The prosecution may not use statements from a custodial interrogation unless the defendant was warned of his Fifth Amendment "right to remain silent." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Because *Miranda* warnings implicitly assure a defendant "that silence will carry no penalty," the United States Supreme Court held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). Our Supreme Court has further explained that

> [a] defendant who receives Miranda warnings is advised that he may remain silent; he is not warned that the right continues only while he is in the custody of the arresting officers. Penalizing the accused for silence before trial is no less punishment for the exercise of a right than penalizing silence at the time of arrest.

*Jones v. State*, 265 Ind. 447, 451, 355 N.E.2d 402, 405 (Ind. 1976). However, when "a defendant does not remain silent, he cannot later claim that the silence was used against him." *Sylvester v. State*, 698 N.E.2d 1126, 1131 (Ind. 1998).

[18]     Here, J.S. initially talked to the police, but then asked for a lawyer.[4] After he was released on bail, but before the review board hearing, he spoke to members of the board. He then declined to participate in the hearing.

[19]     J.S. was not permitted to "remain 'selectively' silent and later claim[] that voids in the incomplete statement are sheltered by the Fifth Amendment and under *Doyle* cannot be used to impeach his testimony." *Carlyle v. State*, 428 N.E.2d 10, 13 (Ind. 1981); *see also United States v. Bonner*, 302 F.3d 776, 784 (7th Cir. 2002) (observing that "it would not serve the criminal justice system to allow defendants to use the Fifth Amendment as both a shield and as a sword, answering questions selectively and preventing the prosecution from mentioning such selectiveness at trial"). Furthermore, the review board was not required to provide J.S. with *Miranda* warnings because the hearing was not a custodial interrogation. *Miranda*, 384 U.S. at 478-79. There can be no

---

[4] The State did not use that request against him.

*Doyle* violation without *Miranda* warnings because they are "prerequisites for finding a constitutional violation." *Myers v. State*, 27 N.E.3d 1069, 1080 (Ind. 2015). Under these circumstances, it is apparent that it would have been futile for appellate counsel to claim a *Doyle* violation; therefore, we find no ineffective assistance on this basis.

## 2. Vouching for Witnesses

[20] Doyle next argues that the prosecutor committed misconduct by vouching for the police officer witnesses. During closing, the prosecutor argued,

> Now, would the Ball State Police Department? Do they have any reason to lie about what they saw that night? Four officers, do they have any reason to lie? In fact, if the[y] did, you know what? Their job, their profession as police officers is done. No better to end a police officer's career, then have them lie on the stand. Their credibility is destroyed forever. They had no reason to lie. They don't care. It's another student-on-student violent act. They do that all the time. Not to this degree, but they deal with it all the time.

Direct Appeal Tr. Vol. III p. 84.

[21] While a prosecutor may not personally vouch for a witness, he may "'comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence.'" *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006) (quoting *Lopez v. State*, 527 N.E.2d 1119, 1127 (Ind. 1988)). A prosecutor may also "respond to allegations and inferences raised by the defense even if the

prosecutor's response would otherwise be objectionable." *Dumas v. State*, 803 N.E.2d 1113, 1118 (Ind. 2004).

[22] Here, the prosecutor's argument was based on the record, which did not show a reason for the police officers to lie. Moreover, J.S. repeatedly implied that the police conducted an incomplete investigation and lied about their observations, meaning that the prosecutor was entitled to respond. *See id.* (holding that the prosecutor "was entitled to counter with argument that the witness was not lying and had no reason to do so"). Finally, the trial court instructed the jury that statements made by the attorneys are not evidence. Under these circumstances, even if appellate counsel had made this argument, J.S. would not have prevailed. We find no error on this basis.

## 3. Appealing to Jury's Passions

[23] Finally, J.S. argues that the prosecutor committed misconduct by appealing to the jury's passions. A prosecutor may not request a jury to convict the defendant for any reason other than his guilt or "phrase a final argument in a manner calculated to inflame the passions or prejudice of a jury." *Jerden v. State*, 37 N.E.3d 494, 499 (Ind. Ct. App. 2015).

[24] Here, in closing arguments, the prosecutor made the following statements:

> Well, we have an extremely vivid account of what happened in that bedroom on March 30, from [A.B.] She told the police at the scene. She gave a voluntary statement at the hospital. She testified at the board review hearing, and also, you heard her sit right there, facing that man, put his hands on her as he tried to

choke the life out of her. She stood up to him. She told you what happened. Consistent, consistent, consistent. Can you imagine what it must have taken to walk into this courtroom, walk past him, sit there and have to look at [the] person who did that to you? That is not an easy thing to do, and many, many victims of domestic violence can't do that. That did happen here today.

Direct Appeal Tr. Vol. III p. 74. This argument was not an attempt to get the jury to convict J.S. for any reason other than his guilt. Instead, it emphasized that A.B.'s testimony was credible because it was consistent with what she had told the police at the scene and because it would have been difficult for A.B. to face her attacker. Moreover, it is apparent that the jury's passions and prejudice were not inflamed, inasmuch as it found J.S. not guilty of the two felony charges. Under these circumstances, appellate counsel was not ineffective for failing to make this argument.

[25] J.S. also argues that appellate counsel should have contended that the cumulative effect of the prosecutor's conduct amounted to fundamental error. We have found no instances of misconduct—or anything coming close to misconduct—therefore, counsel could not have showed cumulative misconduct that denied J.S. a fair trial. In sum, we find that appellate counsel was not ineffective for failing to raise any arguments regarding prosecutorial misconduct.

# C. State's Brief on Direct Appeal

Next, although slightly unclear, J.S. seems to argue that appellate counsel should have objected to the State's brief on direct appeal.[5] He argues, essentially, that the State's statement of facts contains facts that are related to the two charges of which he was acquitted as well as the charge of which he was convicted.

Indiana Appellate Rule 46(A)(6) states that the statement of facts "shall describe the facts relevant to the issues presented for review . . . in accordance with the standard of review appropriate to the judgment or order being appealed." J.S. challenged the constitutionality of the domestic battery statute and the sufficiency of the evidence supporting that conviction, meaning that it was appropriate for the State to recite all facts supporting that conviction, which it did.

What J.S. seems to be arguing is that it was inappropriate for the State to include evidence that he choked A.B. until she lost consciousness. But this evidence was not limited to the strangulation charge (of which he was acquitted), as the State did not specifically allege which touching supported the domestic battery in the charging information. We can only conclude that the

---

[5] J.S. couches it in terms of prosecutorial misconduct, claiming that appellate counsel should have argued that the State committed prosecutorial misconduct via the content of its brief. We decline to find that a Deputy Attorney General representing the State on appeal is a prosecutor who can commit prosecutorial misconduct, but we will reframe the argument so that the substance may be addressed.

choking is evidence of domestic battery. Because Indiana does not use special verdicts, we do not know why the jury acquitted J.S. of strangulation. It may have believed, for example, that he did not impede her breathing or blood circulation. But the jury most likely convicted him of domestic battery for the choking because the evidence showed that her injuries resulted from that act. Therefore, any objection lodged or motion to strike filed by J.S.'s appellate counsel would have been unsuccessful.[6] We find no ineffective assistance on this basis.

## III. This Court's Discussion on Direct Appeal

[29] Finally, J.S. makes another somewhat unclear argument regarding this Court's opinion on direct appeal. It seems as though he raises a freestanding claim of error that is similar to that raised regarding the State's brief—he complains that this Court discussed evidence regarding the choking when he was convicted of domestic battery but acquitted of strangulation. This is an issue that was known and available on direct appeal because he could have raised it in a petition for rehearing or a petition to transfer.[7] As such, it is unavailable on post-conviction review. *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004).

---

[6] We also note that all of these facts were in the record on appeal, meaning that they were available to the Court regardless of whether they were included in the State's brief.

[7] J.S. argues that he could not have raised a new issue in a petition for rehearing. But an argument that this Court erred in its decision is precisely the type of issue that should be raised on rehearing.

[30]     Even if J.S. had not waived this claim, it is meritless. This Court explicitly noted that he was acquitted of the strangulation and criminal confinement charges, and its discussion of the underlying facts in no way implies otherwise. He is not entitled to relief for this claim.

[31]     The judgment of the post-conviction court is affirmed.

May, J., and Tavitas, J., concur.