
FILED

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE
Anthony Hollowell
Greencastle, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court

_____

No. 49S02-1310-PC-684

ANTHONY HOLLOWELL,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

_____

Appeal from the Marion Superior Court, No. 49G02-1008-PC-060299
The Honorable Michael Scott Jensen, Judge Pro Tempore

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-1211-PC-900

_____

**October 30, 2014**

**Rucker, Justice.**

From time to time a case is presented to us that neither implicates this Court's law-giving function, nor involves compelling issues of great public interest. This is such a case. But we elect to address the merits under the general heading of "doing substantial justice." Here, despite a pro se petitioner's best efforts, his attempt to appeal the denial of his petition for post-conviction relief went awry and the Court of Appeals dismissed the appeal. We grant transfer and affirm the judgment of the post-conviction court.

### Background

Anthony Hollowell was convicted of conspiracy to deal in cocaine as a class B felony and the trial court sentenced him to an executed term of sixteen years. Represented by counsel Hollowell appealed his conviction and sentence, which the Court of Appeals affirmed in a memorandum decision. See Hollowell v. State, No. 49A04-1012-CR-736 (Ind. Ct. App. Aug. 19, 2011), trans. denied. Thereafter Hollowell filed a pro se petition for post-conviction relief. After an evidentiary hearing the post-conviction court denied relief on October 18, 2012.

Still acting pro se,[1] on November 2, 2012 Hollowell filed his Notice of Appeal with the appellate court clerk. And his certificate of service declared that Hollowell mailed the notice to the trial court clerk, the court reporter, the trial court, and the attorney general. See Ind. Appellate Rule 9(F)(10) & 24(A)(1) (requiring appellants to file the Notice of Appeal with the appellate court clerk, and serve copies of the Notice on the trial court clerk, the court reporter, and the parties). The trial court clerk received a copy of the Notice, but for reasons not apparent from the record before us, neither the court reporter nor the trial court received a copy.

Further, Hollowell had attached to the Notice of Appeal a motion directed to the trial court requesting permission to proceed *in forma pauperis*, which, if granted, would have afforded Hollowell a copy of the post-conviction transcript at public expense. The motion should also have been filed with the trial court. See App. R. 40(A)(2). Although the appellate docket revealed that a motion to proceed *in forma pauperis* was pending in the trial court, it does

---

[1] Hollowell has proceeded as an unrepresented litigant throughout this appeal as well as before the post-conviction court.

not appear from the record that the trial court clerk ever received or filed such a motion. In addition, the trial court clerk did not immediately notify the court reporter that a transcript had been requested. See App. R. 10(A).

On January 28, 2013 (the day the transcript was due), the court reporter and the trial court judge filed with the Court of Appeals a document titled "Court Reporter's Emergency Verified Motion for Extension of Time to File Transcript." The motion declared that Hollowell *and* the trial court clerk had failed to serve the court reporter and the trial court with a copy of the Notice of Appeal. According to the emergency motion, the court reporter first learned on December 20 that a transcript had been requested, but the motion does not reveal how the request for a transcript came to the court reporter's attention or why the court reporter's motion was not filed until January 28. In any event the motion also represented that "satisfactory arrangements have not been made for payment of the transcript with the court reporter." Id. at 3. We presume this representation reflected that the trial court had either not yet received or otherwise ruled upon Hollowell's motion to proceed *in forma pauperis*. The court reporter's motion requested an extension of time in which to complete the transcript.

In response to the emergency motion, the Court of Appeals issued an order declaring that the court reporter had no obligation to prepare the transcript unless she received further direction from the Court of Appeals. The order also directed Hollowell to show cause within thirty-five days why the appeal should not be dismissed because he had (1) failed to serve a copy of the Notice of Appeal on the court reporter,[2] and (2) failed to make payment arrangements for the transcript. See Hollowell v. State, No. 49A02-1211-PC-900 (Order, Feb. 8, 2013). The Order also warned: "Failure to timely respond to this order and comply with the Indiana Rules of Appellate Procedure may subject this appeal to dismissal." Id. The Court of Appeals also granted Hollowell's Verified Motion for Leave to Proceed on Appeal *In Forma Pauperis*. See id. (Order, Feb. 5, 2013).

---

[2] We note that the Appellate Rules do not *require* dismissal of an appeal where the appellant has failed to serve the court reporter with a copy of the Notice of Appeal, nor do the Rules *expressly* confer discretion on a reviewing court to dismiss an appeal where the appellant fails to serve the court reporter with a copy of the Notice of Appeal. Compare App. R. 9(A)(5) ("Unless the Notice of Appeal is timely filed, the right to appeal shall be forfeited . . . .") with App. R. 45(D) ("[F]ailure to file timely the appellant's brief may subject the appeal to summary dismissal.").

3

Hollowell timely filed his "Response to Order" asserting that he had followed all the rules of appellate procedure, and pointing out the trial court clerk's obligation to notify the court reporter of the filing of the Notice of Appeal and request for transcript. See App. R. 10(A). Acknowledging Hollowell's response the Court of Appeals thereafter dismissed the appeal without further explanation. See No. 49A02-1211-PC-900 (Order, April 10, 2013). Hollowell sought transfer, which we granted on October 11, 2013 thereby vacating the Court of Appeals' order dismissing Hollowell's appeal. See App. R. 58A. Noting that because Hollowell was proceeding *in forma pauperis*, the Court directed that he was entitled to a transcript at public expense. Thereafter full briefing on the merits proceeded in due course.

**Facts and Procedural History**

The facts relevant to this appeal are set forth in the memorandum decision of the Court of Appeals as follows:

> On July 6, 2010, a confidential informant ("the CI") reported to Detective Timothy Waters of the Indianapolis Metropolitan Police Department ("IMPD") that someone was selling cocaine on Addison Street in Indianapolis. Detective Waters, acting as case manager of the ensuing investigation, asked Detective Ethan McGivern to make an undercover buy with the CI. The CI was to take Detective McGivern to a home on Addison Street, introduce him to Grant Jenkins, negotiate the purchase, and then travel to another location to consummate the purchase.
>
> In preparation for the operation, Detective Waters searched the CI. He also fitted Detective McGivern with a Kel, a recording and transmitting device, and photocopied two twenty-dollar bills to use for the drug purchase.
>
> At approximately 7:20 p.m., Detective McGivern and the CI drove to 265 North Addison Street and saw two African-American men on the front porch. Jenkins was one of the men. When the CI and Detective McGivern approached the porch, the CI approached Jenkins and told him that Detective McGivern wanted a "40," meaning forty dollars' worth, or four-tenths of a gram, of cocaine. Jenkins made a phone call that lasted less than one minute. Jenkins then told the CI and Detective McGivern to wait for delivery from someone driving a Dodge Ram pickup truck. Detective McGivern asked to use the restroom in order to look around the house for mail or other identifying information.

Detective McGivern was in the house two minutes before he returned to the porch. About that same time, an older Dodge Ram truck with white over gray primer pulled in front of the house, with the driver's side door closest to the house. Jenkins said "He's here," left the porch, and walked to speak with the driver, the only occupant of the truck. After Jenkins and the driver talked through the open driver's side window, Jenkins returned to the porch and asked Detective McGivern for the money, saying that the guy "didn't want to meet [McGivern] because [he] was white." Tr[.] at 167. Detective McGivern gave Jenkins two twenty-dollar bills, which had been photocopied beforehand. Jenkins then "walked up to the truck and handed the driver the IMPD buy money, at which time the driver reached out with his right hand, had his hand cupped, dropped his hand into Mr. Jenkins' hand, and Jenkins closed his hand and returned to the porch." Id. at 168.

When Jenkins returned to the porch, he gave Detective McGivern forty dollars' worth of crack cocaine. From the time the truck approached the house until Jenkins delivered the cocaine to the detective, Jenkins' hands were never in his pockets. And the person in the Dodge truck drove away.

As the CI and Detective McGivern left the Addison Street house, they watched the Dodge pickup. Through the Kel, Detective McGivern gave Detective Waters the physical description of the driver and the truck and said that the driver was the person who had delivered the cocaine. Detective Waters then gave Officer Jason Norman a description of the truck and its driver. Then he met with the CI and Detective McGivern at a pre-arranged nearby location to debrief and drop off the cocaine.

After receiving a description of the Dodge pickup, Officer Norman waited in a Kroger parking lot between Holmes Street and King Street. A short time later, he observed a pickup and driver pass by that matched the description from Detective Waters. Officer Norman followed the pickup and, after observing the truck cross the center line a couple of times, initiated a traffic stop. In the traffic stop, Officer Norman collected identification from the driver, Anthony Hollowell.

The State charged Hollowell and Jenkins with conspiracy to commit dealing in cocaine, as a Class B felony; dealing in cocaine, as a Class B felony; and possession of cocaine, as a Class D felony. Jenkins pleaded guilty as charged without a plea agreement prior to Hollowell's trial.

* * *

Following the close of evidence and deliberations, the jury found Hollowell guilty of conspiracy to commit dealing in cocaine but not guilty of dealing in cocaine or possession of cocaine. At sentencing, the trial court found Hollowell's criminal history, including his past violation of probation and Community Corrections, to be an aggravator, but the court found no mitigators.

The court sentenced Hollowell to sixteen years executed in the Department of Correction with credit for time served.

Hollowell, No. 49A04-1012-CR-736, slip op. at 2-4, 5.  On appeal Hollowell raised several claims including a challenge to the sufficiency of the evidence supporting the conviction.  In addressing whether there was sufficient evidence to show the existence of an agreement between Hollowell and Jenkins, the Court of Appeals had this to say:

> Hollowell's agreement to commit dealing in cocaine can be inferred from circumstantial evidence.  Again, the evidence shows that the CI told Jenkins that Detective McGivern wanted to buy cocaine; Jenkins made a call and then said the cocaine would be delivered in a Dodge Ram truck; a few minutes later Hollowell drove up in a Dodge Ram truck; Jenkins spoke with the driver of the truck and then reported to Detective McGivern that the driver would not deal with the detective because he was white; Detective McGivern gave the documented buy money to Jenkins, Jenkins gave the money to the driver, and then Jenkins handed the cocaine to the detective; shortly thereafter, Officer Norman stopped a Dodge Ram pickup driven by Hollowell, the same person who had received the money from Jenkins, and *Hollowell had in his possession the buy money that Detective McGivern had used for the drug transaction.* From that evidence, the jury could have reasonably inferred that Hollowell had agreed with Jenkins to commit the offense of dealing in cocaine.  And whether or not Hollowell gave cocaine to Jenkins after he gave the money to Hollowell, the evidence is undisputed that Jenkins gave cocaine to Detective McGivern.

Hollowell, No. 49A04-1012-CR-736, slip op. at 7-8 (emphasis added).

In point of fact there was no evidence before the jury that Hollowell had been found in possession of the buy money.  Hence, the italicized sentence was unsupported by the record.  Hollowell petitioned for post-conviction relief alleging the ineffective assistance of appellate counsel.  The post-conviction court denied relief and Hollowell now appeals.

**Standard of Review for Post-Conviction Proceedings**

"The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of

6

one appealing from a negative judgment." Id. To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

**Standard of Review for Assistance of Appellate Counsel**

The standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in Strickland v Washington, 466 U.S. 668 (1984). See Helton v. State, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002) (citing Strickland, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. Id. (citing Strickland, 466 U.S. at 694).

**Discussion**

Hollowell's claim of ineffective assistance of counsel presents something of a moving target. First, in his petition filed with the post-conviction court, in response to the question "State concisely all the grounds known to you for vacating, setting aside or correcting your conviction and sentence," Hollowell responded "Ineffective assistance of counsel due to

appellate counsel, Michael Borschel's failure to correct misstatement of Facts contained in the Appellee's brief in regards to circumstantial evidence." App. at 70. But before the post-conviction court, Hollowell presented no evidence whatsoever that the Brief presented by the State—the Appellee—contained any misstatement of facts. Indeed the Appellee's Brief was never even introduced into evidence.[3] Hence on the only point that Hollowell raised as constituting ineffective assistance, he offered no evidence in support. Instead Hollowell shifted gears and began his presentation of evidence arguing that the crime of conspiracy "requires proof of two intents, an intent to commit a felony, and an intent to agree to commit the felony." Tr. at 16; see Ind. Code § 35-41-5-2 ("A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony."). According to Hollowell appellate counsel rendered ineffective assistance by failing to "challenge[] both intents in [his] brief to the Court of Appeals." Tr. at 17. Again, in his petition Hollowell mentioned nothing about "two intents." And not surprisingly the post-conviction court entered no findings or conclusions with respect to this claim. This claim is waived for review. See Ind. Post-Conviction Rule 1(8); Minnick v. State, 698 N.E.2d 745, 753 (Ind. 1998) (declaring, "[b]ecause the defendant's final amended post-conviction petition did not claim denial of counsel from the failure to request funds, this specific claimed failure is not available in this appeal").

Before the post-conviction court, supported by the narrative portion of his petition for post-conviction relief, Hollowell eventually got to the heart of his claim, namely: Counsel rendered ineffective assistance for failing to argue on appeal the lack of circumstantial evidence to support his conspiracy conviction. Hollowell's argument proceeds along the following lines: (1) to support his conviction for conspiracy the State was required to prove that he entered an agreement with another person—here co-conspirator Jenkins—to commit the offense of dealing in cocaine; (2) there was no evidence presented of a conversation between him and Jenkins; (3) there was no evidence of Jenkins giving any money to Hollowell; and (4) there was no evidence that he was in possession of the marked buy-money when stopped by the police. See Br. of Appellant at 8. According to Hollowell, "[i]f none of the aforementioned exists, then there does

_____

[3] Assuming this was a scrivener's error and Hollowell intended to say "Appellant's" Brief, he still failed to identify any factual errors in this Brief although he introduced it into evidence to support a different argument.

8

not exist the elements of a conspiracy." Tr. at 29. And Hollowell faults appellate counsel for not pressing this claim on appeal. As Hollowell puts it "Appellant attorney Michael Borschel showed ineffective assistance of Counsel with regards to not challenging the point of an 'agreement' being [i]nferred from circumstantial evidence . . . ." Br. of Appellant at 9 (citation omitted).

When raised on collateral review ineffective assistance of appellate counsel claims generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006); Fisher, 810 N.E.2d at 677. In this case Hollowell's PCR claim falls in the latter category. He essentially contends that appellate counsel should have done a better job arguing the sufficiency of the evidence.

However, claims of inadequate presentation of certain issues, as contrasted with the denial of access to an appeal or waiver of issues, are the most difficult for defendants to advance and for reviewing tribunals to support. Bieghler v. State, 690 N.E.2d 188, 195 (Ind. 1997). And this is so because such claims essentially require the reviewing court to reexamine and take another look at specific issues it has already adjudicated to determine "whether the new record citations, case references, or *arguments* would have had any marginal effect on their previous decision." Id. (emphasis added). Such is the case here.

As indicated earlier in this opinion, on direct appeal appellate counsel challenged the sufficiency of the evidence. He did so contending in part (1) that the jury improperly inferred that Hollowell intended to commit dealing in cocaine; (2) that it could not be said with certainty that Detective McGivern saw Hollowell deliver cocaine to Jenkins; and (3) Hollowell's mere presence when Jenkins delivered the cocaine to Detective McGivern was not sufficient to support Hollowell's conviction for conspiracy. See Hollowell, No. 49A04-1012-CR-736, slip op. at 6-8. Appellate counsel did not focus upon or mention specifically the alleged lack of circumstantial evidence to support the State's claim that Hollowell entered an agreement with Jenkins. But the Court of Appeals addressed this issue in some detail. See supra page 6. There was a misstatement in the court's memorandum decision, namely: that "Hollowell had in his

possession the buy money that Detective McGivern had used for the drug transaction." Id. However, even absent this lone sentence the remaining circumstantial evidence recited by the Court of Appeals nonetheless supported its conclusion that "the jury could have reasonably inferred that Hollowell had agreed with Jenkins to commit the offense of dealing in cocaine." Hollowell, No. 49A04-1012-CR-736, slip op. at 8. Here Hollowell has not persuaded us that a more robust presentation of this claim by appellate counsel would have yielded a different outcome. Stated somewhat differently Hollowell has failed to show a reasonable probability that but for counsel's failure to argue the sufficiency claim with more specificity the result of Hollowell's direct appeal would have been any different. In sum the post-conviction court did not err in denying Hollowell's claim that appellate counsel rendered ineffective assistance.

## Conclusion

We affirm the judgment of the post-conviction court.

Rush, C.J., and Dickson, David and Massa, JJ., concur.