## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2019, 7:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Senaca Lapsley
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Senaca Lapsley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 27, 2019

Court of Appeals Case No.
18A-PC-2063

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D04-1602-PC-16

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Senaca Lapsley (Lapsley), appeals the post-conviction court's denial of his petition for post-conviction relief (PCR).

We affirm.

# ISSUES

Lapsley presents three issues on appeal, which we restate as the following:

(1) Whether he received ineffective assistance of trial counsel;

(2) Whether his due process rights were violated when he received an enhanced sentence on the aggravated battery conviction to which his habitual offender enhancement was also attached; and

(3) Whether he was deprived of a fair post-conviction proceeding.

# FACTS AND PROCEDURAL HISTORY

The facts of the underling offenses, as found by this court, are as follows:

> At around 12:00 a.m. on December 25, 2013, Lapsley asked his girlfriend, Tequila James, if she would drop him off to see his brother at Stein Tavern. James saw that Lapsley had a pistol "on the side of his jacket and the pants pocket." James dropped Lapsley off at Stein Tavern and drove away.
>
> At approximately 1:00 a.m. on December 25, 2013, Lapsley, who had dreadlocks, his brother Lorenzo, and another man entered Sports and Spirits, a tavern in Fort Wayne, Indiana. There were around fifty people at the bar. Randy Daniels was working as a doorman at the bar, and Anna Roque and Zachary Huddleston,

both of whom worked as bartenders but were not working at the time, were socializing with Daniels. At some point, Lorenzo punched a man in the face, and Daniels rushed over to break up the fight. Daniels attempted to defuse the situation and, with the help of Huddleston, directed Lapsley, Lorenzo, and the third man toward the door. Daniels, with Huddleston's assistance, forced the three men to exit the bar through the front door, and Daniels locked the door.

Within seconds after he exited the building, Lapsley pulled a gun out of his clothing, pointed it directly through the front window of the bar, and fired the gun multiple times. Roque was struck in the hand, and Huddleston was struck in the neck and abdomen. A bullet entered Huddleston's neck below his chin and exited out of his jaw, shattering it. A second bullet entered Huddleston's abdomen, traveled through his bladder, and struck the femoral artery in his left leg. Huddleston tried to scream but could not because of the blood in his throat. Roque helped Huddleston roll over so that he could cough so that he would not choke on his own blood. A part of one of Roque's fingers later had to be amputated as a result of her injuries. Huddleston later underwent approximately ten operations during three hospital stays totaling about two months.

In the morning following the shooting, Lapsley told James that Lorenzo had "knocked out somebody" at Sports and Spirits. Later that night, Lapsley and James were watching the news, and there was a report about the shooting at Sports and Spirits. When the report showed a picture of the window of Sports and Spirits with bullet holes in it, Lapsley yelled: "Damn, that look like my holes I put through the windows."

*Lapsley v. State*, No. 02A05-1408-CR-399 (Ind. Ct. App. March 20, 2015).

On December 27, 2013, the State filed an Information, charging Lapsley with two Counts of Class B felony aggravated battery and three Counts of Class C felony criminal recklessness. The State also alleged that Lapsley was an habitual offender. Lapsley was appointed a public defender to represent him in the proceedings. On July 9, 2014, a jury found Lapsley guilty as charged, and it found that he was an habitual offender. On August 7, 2014, the trial court sentenced Lapsley to twenty-year terms for each of the Class B felony aggravated batteries and to eight years for one of the Counts of Class C felony criminal recklessness, all to be served consecutively. The trial court enhanced Lapsley's sentence for the first Count of aggravated battery by thirty years for being an habitual offender, for an aggregate sentence of seventy-eight years. Lapsley pursued a direct appeal, challenging the sufficiency of the evidence sustaining his convictions and the inappropriateness of his sentence. On March 20, 2015, this court affirmed his convictions and sentence. *Id*.

On February 8, 2016, Lapsley filed his PCR. On May 19, 2017, the Public Defender of Indiana filed an appearance but subsequently withdrew from the case on August 17, 2017. Lapsley proceeded *pro se* with his PCR, which he amended on October 2, 2017. Among his twenty-six contentions of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct, Lapsley alleged the following:

> J. Trial counsel [] failed to object or correct the [S]tate's misrepresentation of crucial evidence used against me. Noted as a 404(b) violation under Indiana Rules of Evidence. And a lesser include[d] offense should've been given to the jurors.

K. Trial counsel [] [was] ineffective [be]cause he failed to argue defective indictment or information, lack of probable cause and failure to properly inform me of the charges against me.

(Appellant's App. Vol. II, p. 5).

On October 25, 2017, the trial court granted the State's motion to require Lapsley to submit his case by affidavit. On November 6, 2017, Lapsley filed an affidavit in support of his PCR. Lapsley's affidavit contained general allegations of ineffective assistance of trial and appellate counsel as well as the averment that "Petitioner was denied fundamental due process failure [sic] to inform defendant of prohibited conduct." (Appellant's App. Vol. II, p. 79). On July 31, 2018, the post-conviction court denied Lapsley's PCR. Regarding Lapsley's claim of ineffective assistance of trial counsel, the post-conviction court concluded that Lapsley had failed to demonstrate any inadequacy in his trial counsel's performance because he did not identify any lesser-included offenses he had been entitled to, nor had he specified how the Information had been defective or failed to inform him of the charges against him.

Lapsley now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

PCR proceedings are civil proceedings in which a petitioner may present limited collateral challenges to a criminal conviction and sentence. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). In a PCR proceeding, the petitioner

bears the burden of establishing his claims by a preponderance of the evidence. *Id*. When a petitioner appeals from the denial of his PCR, he stands in the position of one appealing from a negative judgment. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014). To prevail on appeal from the denial of a PCR, the petitioner must show that the evidence "as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the [PCR] court." *Id*. In addition, where a PCR court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to its legal conclusions, but we will reverse its findings and judgment only upon a showing of clear error, meaning error which leaves us with a definite and firm conviction that a mistake has been made. *Id*.

## II. *Ineffective Assistance of Trial Counsel*

Lapsley contends that his trial counsel was ineffective for failing to challenge the Information because it did not allege that he committed the aggravated batteries by means of a deadly weapon, namely, a firearm. He also argues that his trial counsel was ineffective for failing to request an instruction for Class D felony battery as a lesser-included offense of aggravated battery. However, in his amended PCR and affidavit in support, Lapsley made general allegations that his trial counsel should have challenged the Information and requested a lesser-included instruction without raising the more specific arguments that he now raises on appeal. It is well-settled that issues not raised in a PCR petition may not be raised for the first time on appeal from the denial of that petition. *Pavan v. State*, 64 N.E.3d 231, 233 (Ind. Ct. App. 2016). Accordingly, we find

that these arguments were waived because they were not raised in the post-conviction court proceedings.

[11] However, even if they had been argued below, Lapsley would not be entitled to relief. We evaluate ineffective assistance of counsel claims under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a petitioner must show that 1) his counsel's performance was deficient based on prevailing professional norms; and 2) that the deficient performance prejudiced the defense. *Wilkes*, 984 N.E.2d at 1240 (citing *Strickland*, 466 U.S. at 687). In order to demonstrate sufficient prejudice, the petitioner must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 1241 (citing *Strickland*, 466 U.S. at 694). A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. A petitioner's failure to satisfy either the 'performance' or the 'prejudice' prong of a *Strickland* analysis will cause an ineffective assistance of counsel claim to fail. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006).

[12] We begin by noting that Lapsley did not include copies of the charging Informations he challenges in his Appendix. However, the chronological case summary for the underlying criminal case included in the Appendix indicates that the State charged Lapsley with two Counts of aggravated battery under Indiana Code section 35-42-2-1.5(2) (1997), which, at the time he committed the offenses, provided, in relevant part, that

[a] person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:

* * *

(2) protracted loss or impairment of the function of a bodily member or organ[]

* * *

commits aggravated battery, a Class B felony.

Thus, the statute did not require that the State allege or prove that the offense was committed by means of a deadly weapon as Lapsley contends here on appeal. Because there was no deficiency in the charging information, Lapsley did not show that his counsel's performance was deficient for failing to challenge it, or that he was prejudiced thereby. *See Grafe v. State*, 686 N.E.2d 890, 896 (Ind. 1997) ("The failure to pose a meritless objection or present a meritless argument cannot constitute ineffective assistance of counsel because it does not result in prejudice to the defendant."). Because Lapsley's argument regarding his counsel's failure to request an instruction on the lesser-included offense of Class D felony battery hinges on his contention that the State's charging information was deficient, that claim fails as well. For the same reasons, the post-conviction court's conclusion that Lapsley had failed to demonstrate inadequate performance on the part of his trial counsel was not clearly erroneous. *See Hollowell*, 19 N.E.3d at 269.

In this section of his brief, Lapsley also argues that the trial court violated his due process rights by failing to instruct the jury that they must find that the aggravated batteries were accomplished by means of a deadly weapon. This is a freestanding claim of trial court error that was available to Lapsley on direct appeal but was not raised. Thus, Lapsley was procedurally barred from bringing that claim on post-conviction relief. *See Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001) (holding that issues that were known and available on direct appeal, but not raised, are waived). In addition, as we have already determined, it is a meritless claim because the State was not required to prove the element of use of a deadly weapon in order to prove the offense. Lapsley's related argument that his post-conviction counsel was ineffective for failing to raise the issue is also unavailing because, in addition to being based on a meritless argument, Lapsley proceeded *pro se* in his post-conviction proceedings. A *pro se* litigant may not raise a claim of ineffective assistance of counsel against himself. *Carter v. State*, 512 N.E.2d 158, 162 (Ind. 1987).

### III. *Aggravated Battery Sentence*

Lapsley next argues that the trial court deprived him of his fundamental right to due process when it enhanced his sentence on Count I for Class B felony aggravated battery based on the same offenses that made the showing that he is an habitual offender. As noted above, this is a freestanding claim of trial court error that may not be raised in a PCR. *Timberlake*, 753 N.E.2d at 597. In addition, Lapsley has not cited to the trial court's sentencing statement or written sentencing order, and so even if the claim were properly before us, he

has failed to meet his burden on appeal to demonstrate that the trial court's sentencing was improper. *See Wilkes*, 984 N.E.2d at 1240. Lastly, even if the trial court had sentenced him as Lapsley argues, he has not demonstrated any error on the part of the trial court. Under the sentencing scheme in effect at the time he committed the offenses, a trial court was not precluded from enhancing a base felony with the same criminal record that supported the finding that the defendant was an habitual offender. *Pedraza v. State*, 887 N.E.2d 77, 80 (Ind. 2008).

## IV. *Fair Post-Conviction Proceeding*

[15]  Lapsley's final claim is that he was deprived of a fair post-conviction proceeding because the Public Defender of Indiana withdrew from his case and because he was provided a form at the prison library to file his affidavit in support of his PCR that he contends was inadequate in some unspecified manner. There is no constitutional right to counsel for post-conviction proceedings under either the federal or state constitutions. *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012). After the Public Defender withdrew from his case, Lapsley had the right to proceed *pro se* with his PCR, which he did. *Pro se* litigants such as Lapsley are "held to the same standards as a trained attorney and [are] afforded no inherent leniency simply by virtue of being self-represented." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014). As a *pro se* litigant, it was incumbent on Lapsley to prepare and file his affidavit and no one else. We conclude that Lapsley was not deprived of a fair proceeding as he pursued his PCR *pro se*.

# CONCLUSION

Based on the foregoing, we conclude that Lapsley received effective assistance of trial counsel, his freestanding claim of trial court error at sentencing is both procedurally barred and without merit, and that he received a fair post-conviction proceeding.

Affirmed.

Bailey, J. and Pyle, J. concur