## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 26 2019, 8:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Sam Spicer, II
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan M. Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sam Spicer, II,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 26, 2019

Court of Appeals Case No.
19A-PC-145

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1604-PC-9

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Sam Spicer, II, (Spicer), appeals the post-conviction court's denial of his petition for post-conviction relief (PCR).

We affirm.

# ISSUES

Spicer presents two issues on appeal, which we restate as the following:

> (1) Whether Spicer's freestanding claim that the trial court abused its discretion when it denied his motion to withdraw his guilty plea is procedurally defaulted; and

> (2) Whether the post-conviction court's findings of fact and conclusions of law denying his PCR are clearly erroneous.

# FACTS AND PROCEDURAL HISTORY

The facts pertaining to Spicer's underlying conviction for Class A felony conspiracy to commit dealing in methamphetamine are as follows:

> Following a tip, detectives of the Dearborn County Sheriff's Department initiated an investigation into a possible methamphetamine manufacturing operation. Over a period of time, the detectives observed two individuals, later identified as Spicer and Lisa Ellis ("Ellis"), "continuously involved in the criminal activity" of transporting numerous individuals to pharmacies in Dearborn County, with the goal of purchasing pseudoephedrine.

> As part of the scheme, Spicer would deliver the pseudoephedrine to Vernis Newton ("Newton") in Ohio and to an unnamed

individual in Kentucky; methamphetamine was manufactured in both locations. Each ninety-six count box of pseudoephedrine that was purchased could produce approximately two grams of methamphetamine. Spicer and Newton had an arrangement by which Newton would give Spicer one gram of methamphetamine, and Newton would keep the rest. Spicer, in turn, kept one half gram of methamphetamine for himself and gave the other half to the individual who had purchased the box of pseudoephedrine. The people involved in this conspiracy were mostly addicts and undereducated, some having only an eighth grade education.

The probable cause affidavit, signed by Detectives Norman Rimstidt and Carl Pieczonka, described various purchases observed by the detectives. In all, the detectives saw individuals purchasing five-and-a-half boxes of pseudoephedrine, an amount detectives estimated "is equivalent to 15.84 grams of pseudoephedrine." This amount of pseudoephedrine was "well in excess of what it would take to manufacture more than three grams of methamphetamine."

On February 14, 2014, the State charged Spicer and approximately twenty-four other co-defendants with Class A felony conspiracy to commit dealing in methamphetamine in an amount of three grams or more. The overt act alleged to be in furtherance of the agreement was the purchase of pseudoephedrine for the manufacture of methamphetamine.

*Spicer v. State*, No. 15A05-1409-CR-410, (Ind. Ct. App. May 12, 2015) (record citations omitted), *trans. denied*. The trial court appointed a public defender (Guilty Plea Counsel) to represent Spicer. Spicer invoked his right to a speedy trial, and his jury trial was scheduled for April 7, 2014. The parties engaged in discovery and plea negotiations. By April 4, 2014, the State had negotiated plea

bargains with over twenty of Spicer's co-defendants, and the State had completed its trial preparation.

[5] On April 4, 2014, which was the Friday before Spicer's trial was to begin on Monday, the trial court was notified that the parties had entered into a plea agreement.[1] The trial court convened a guilty plea hearing. When the parties appeared in court, Guilty Plea Counsel informed the trial court that Spicer had changed his mind and had decided to exercise his right to a jury trial. The State verified that it was prepared for trial. The trial court confirmed Spicer's trial date of April 7, 2014, and recessed the proceedings.

[6] Later in the day on April 4, 2014, the trial court reconvened the proceedings because Spicer had decided to change his plea pursuant to a plea agreement wherein he would plead "open" to the Class A felony charge. (PCR Exh. 7, Exh. Vol. I, p. 136). When the parties appeared in court, Spicer indicated through Guilty Plea Counsel that he desired to have a specific paragraph removed from the plea agreement. The State would not agree to the proposed change and suggested that Spicer simply plead guilty without having any plea agreement in place.

[7] Before taking Spicer's change of plea, the trial court verified with Spicer that he understood his trial rights, understood that he was waiving them with his plea, had not been offered anything or been threatened to induce his plea, and that he

---

[1] The record is silent regarding the terms of the original plea agreement.

felt that his plea was his own free choice and decision. The trial court also verified with Spicer that he understood that he was pleading "open" to the Class A felony charge which carried a possible sentencing range of between twenty and fifty years, with an advisory sentence of thirty years. (PCR Exh. 7, Exh. Vol. I, p. 137). Spicer confirmed to the trial court that he wished to plead guilty despite understanding that his criminal record could be considered by the trial court as a basis for increasing his sentence. Spicer established a factual basis for his plea. The trial court accepted Spicer's guilty plea and set the matter for sentencing for June 10, 2014. Spicer's sentencing hearing was later rescheduled for July 24, 2014. Spicer's pre-sentence investigation report revealed that Spicer had a criminal history dating from 2003 consisting of two prior felony convictions and five prior unrelated misdemeanor convictions.

[8] Between his guilty plea hearing and sentencing, Spicer filed several letters and *pro se* motions with the trial court seeking to set aside his guilty plea. On June 2, 2014, Spicer wrote a *pro se* letter to the trial court in which he claimed that he was firing Guilty Plea Counsel because, among other things, he alleged that Guilty Plea Counsel had advised him that he would "get no less or no more in the case [than] anybody else. Which the way I understood would be 20 suspend 10 do 5 with [purposeful] incarceration, which now I believe otherwise now [sic]." (PCR Exh. 5, Exh. Vol. I, p. 57). In a *pro se* motion to withdraw guilty plea he filed with the trial court on July 3, 2014, Spicer alleged that Guilty Plea Counsel had been ineffective for failing to review the plea agreement with him prior to his change of plea and that his counsel had "no

criminal justice knowledge." (Guilty Plea App., Vol. I, p. 184). Spicer also asserted his innocence to the charge. In a second *pro se* motion to withdraw guilty plea filed with the trial court on July 14, 2014, Spicer argued that his plea should be set aside because he was asserting his innocence to the charge. Spicer also alleged that Guilty Plea Counsel had been ineffective but did not raise any detailed allegations.

[9]     On July 24, 2014, the trial court held a combined hearing on sentencing and on Spicer's motions to set aside his guilty plea. The trial court first addressed Spicer's motions to withdraw his plea. Spicer re-asserted his claim that Guilty Plea Counsel had advised him that he would get "no less and no more than anybody else in the case, and that's the may [sic] reason I pled open to the A." (PCR Exh. 7, Exh. Vol. I, p. 145). The trial court asked Guilty Plea Counsel for comment, and Guilty Plea Counsel informed the trial court that he had explained to Spicer what the different possibilities of resolving the case were, that he thought that the State had a strong case against Spicer, including a number of co-defendants who were willing to testify against him, and that Spicer had decided to plead guilty. Guilty Plea Counsel stated, "I thought that was in his best interests at that time . . . and I still do." (PCR Exh. 7, Exh. Vol. I, p. 146). The trial court took Spicer's motions to withdraw his guilty plea under advisement and proceeded to take evidence and argument for sentencing, which it also took under advisement.

[10]    On August 13, 2014, the trial court denied Spicer's motions to set aside his plea. The trial court found that Spicer had admitted his factual guilt, Spicer had failed

to demonstrate any incompetence by Guilty Plea Counsel, Spicer had failed to demonstrate that any manifest injustice would result if his plea was not withdrawn, and that the State would be significantly prejudiced if it were, as it had extended favorable plea agreements to over twenty of Spicer's co-conspirators in order to procure their testimony for Spicer's trial. On August 13, 2014, the trial court also sentenced Spicer to forty years of incarceration. The trial court found Spicer's guilty plea and hardship to his family as mitigating factors which were outweighed by the significant aggravating factors of the nature and circumstances of the crime, Spicer's criminal record, and the fact that he was on probation for a felony conviction at the time of the offense.

[11] Spicer pursued a direct appeal and raised two issues: (1) Whether the trial court considered improper aggravating circumstances for sentencing, and (2) whether the trial court's sentence was inappropriate given his character and the nature of his offense. *See Spicer*, slip op. at 3-5. This court affirmed Spicer's sentence. *Id.* at 5.

[12] On April 25, 2016, Spicer filed his PCR, which he amended on June 1, 2018, after the public defender had withdrawn from his case. In his PCR, Spicer alleged that the trial court had abused its discretion in denying his motions to withdraw his guilty plea and that Guilty Plea Counsel had been ineffective for "misleading [Spicer] to believe if he took a plea that he would not get any more time [than] the rest of the defendants, which was the main reason why Spicer pled guilty[.]" (PCR App. Vol. II, p. 29). On August 24, 2018, and November 20, 2018, the post-conviction court held evidentiary hearings on Spicer's PCR.

Guilty Plea Counsel testified that he recalled that Spicer was reluctant to go to trial. Spicer asked Guilty Plea Counsel if he recalled telling Spicer that he would get no more or less of a sentence than his co-defendants if he pleaded guilty, that if Spicer took the case to trial he could get a forty or fifty-year sentence, and that Spicer had to plead guilty open to the charge. Guilty Plea Counsel responded that he "would have told you what your options were, which ones I thought were most advisable. But I would never tell you a guaranteed outcome of any option you might take." (PCR Transcript Vol. I, p. 26). Guilty Plea Counsel explained that he would not have told Spicer that he would get no more or less than his co-defendants because "different factors come up, and it's always at the discretion of the [c]ourt. All I can tell you is my feelings about how things are likely to turn out, but I would never guarantee anything like that." (PCR Tr. Vol. I, p. 27). When Spicer posited that he simply took Guilty Plea Counsel's word for what he said Spicer would receive as a sentence, Guilty Plea Counsel responded, "I never gave you my word on what outcome you would receive under any scenario." (PCR Tr. Vol. I, p. 27). Spicer's sister, Ruby Spicer (Ruby), also testified at the hearing on Spicer's PCR in support of his theory that Guilty Plea Counsel had informed Spicer he would receive a sentence no more and no less severe than his co-defendants. On December 6, 2018, both Spicer and the State submitted proposed findings of fact and conclusions of law to the post-conviction court.

On December 18, 2018, the post-conviction court entered its Order denying Spicer's PCR, in support of which it entered the following relevant findings of fact and conclusions of law:

> 21. [Guilty Plea Counsel] testified that he did not recall ever telling Mr. Spicer that if he pled open, he would receive "no more or no less than anybody else in the case."
>
> * * * *
>
> 23. [Guilty Plea Counsel] testified that he would "never tell you [Spicer] a guaranteed outcome of any option you might take."
>
> * * * *
>
> 26. Ruby Spicer testified that [Guilty Plea Counsel] had a discussion with Ruby in which he claimed Spicer would not receive worse than any other co-defendant if he were to plead open to the single charged count, and that "the Judge would probably be more lenient, in fact, on him taking it."
>
> 27. Ruby Spicer also stated, when asked by the [c]ourt, that her testimony as to what [Guilty Plea Counsel] said was "what I got out of the conversation."
>
> 28. Spicer presented no further evidence at [the] hearing beyond the testimony of [Guilty Plea Counsel] and Ruby Spicer.
>
> * * * *

31. Spicer similarly did not enter the record of the proceedings into evidence, nor request the [c]ourt to take judicial notice of any record of proceedings.

* * * *

43. Additionally, the [c]ourt finds Spicer's proffered evidence that he was "promised" to receive no less than any of the other co-defendants' sentences by pleading open to the [c]ourt to be unpersuasive.

(PCR App. Vol. II, pp. 12-13, 15). The post-conviction court found Ruby's testimony to be "suspect," given that eighteen of his co-defendants had pleaded to Class D felony charges, one co-defendant had judgment on his Class D felony conviction entered as a Class A misdemeanor, three co-defendants pleaded to single Class B felony charges, and one co-defendant pleaded to a Class A felony charge with a fixed sentence of thirty years with fifteen years suspended. (PCR App. Vol. II, p. 15). The post-conviction court found that

> it is illogical to believe that an attorney would guarantee Spicer that he would receive "no more or less" than the twenty-four (24) co-defendants, when such light sentences for all but one (1) co-defendant were legally impossible to obtain for Spicer because he was pleading guilty to the Class A Felony. He could not reasonably expect to receive the same sentence as his co-defendants when they negotiated for and received lesser charges.

(PCR App. Vol. II, p. 15). Because it found that Spicer had failed to show that Guilty Plea Counsel had rendered deficient performance, the post-conviction

court declined to determine whether Spicer had suffered any prejudice as a result of Guilty Plea Counsel's representation.

[14] Spicer now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Withdrawal of Guilty Plea*

[15] Spicer contends that the trial court abused its discretion when it denied his motion to withdraw his guilty plea. More specifically, he argues that a withdrawal of his plea was merited because he entered his plea based on mistaken sentencing advice and because he professed his innocence to the trial court prior to sentencing. The State responds that Spicer was procedurally barred from bringing that claim in his PCR and that it is not available for our review. We agree with the State.

[16] As a general rule, a defendant is permitted to move to withdraw his guilty plea prior to sentencing. *See* Ind. Code § 35-35-1-4(b). However, once a defendant has moved the trial court for the withdrawal of his plea and the trial court denies the motion, a direct appeal is the proper avenue for contesting the trial court's decision. *Brightman v. State*, 758 N.E.2d 41, 44 (Ind. 2001). If a defendant fails to raise the issue that was available for direct appeal, it is waived and cannot be raised in a post-conviction proceeding. *See Mills v. State*, 868 N.E.2d 446, 452 (Ind. 2007).

[17] Here, Spicer moved the trial court to withdraw his plea prior to sentencing. At the July 24, 2014, combined plea withdrawal and sentencing hearing, the trial

court heard evidence on Spicer's motions and took the matter under advisement. On August 13, 2014, the trial court denied Spicer's motions to withdraw his plea. Spicer pursued a direct appeal but did not raise the issue of the trial court's denial of his motions to withdraw. Therefore, the issue was waived, was not properly raised in Spicer's PCR, and is not available for our review. *See id.*

## II. *Ineffectiveness of Counsel*

### A. *Standard of Review*

[18] Spicer appeals following the post-conviction court's denial of relief. PCR proceedings are civil proceedings in which a petitioner may present limited collateral challenges to a criminal conviction and sentence. *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018). In a PCR proceeding, the petitioner bears the burden of establishing his claims by a preponderance of the evidence. *Id.* When a petitioner appeals from the denial of his PCR, he stands in the position of one appealing from a negative judgment. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014). To prevail on appeal from the denial of a PCR, the petitioner must show that the evidence "as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Id.* In addition, where a post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to its legal conclusions, but we will reverse its findings and judgment only upon a showing of clear error, meaning error which leaves us with a definite and firm conviction that a mistake has been made. *Id.*

## B. *Findings and Conclusions*

[19] Before proceeding to Spicer's argument of ineffective assistance of counsel, we will address two brief preliminary arguments made by Spicer regarding the post-conviction court's findings and conclusions. Spicer first draws our attention to the fact the post-conviction court's order "is a verbatim adoption of the State's proffered findings and conclusions." (Appellant's Br. pp. 13-14). Spicer does not argue that he was deprived of a fair and full adjudication of his PCR, but he correctly notes that our supreme court has observed that the wholesale adoption of a party's findings results in "an inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court." *Prowell v. State*, 741 N.E.2d 704, 709 (Ind. 2001). Nevertheless, in light of the high volume of cases presided over by trial court judges and the need to "keep the docket moving," our supreme court has declined to prohibit the practice. *Id*. at 708-09.

[20] Our review of the post-conviction court's Order revealed that it made some non-substantive changes to the State's proposed findings and conclusions, and, therefore, there is evidence that the post-conviction court did not simply rubberstamp the State's proposed order. We are cognizant that Spicer declined to waive the post-conviction court's thirty-day deadline for entering its Order. However, we do not promote such near-wholesale adoptions of proposed orders, because, as noted by our supreme court, it endangers the perception of the judiciary as providing full, fair, and unbiased determinations. *Id*. at 709.

[21]     Spicer also challenges the post-conviction court's finding that he "did not enter the record of the proceedings into evidence, nor request the [c]ourt to take judicial notice of any record of proceedings." (PCR App. Vol. II, p. 13). Our review leads us to conclude that this finding does not enjoy support in the record. Spicer's proffered PCR Exhibits 1-7, consisting of relevant portions of the record of proceedings in the underlying Class A felony case and transcripts of the guilty plea hearing and hearing on Spicer's motions to withdraw his plea, were admitted into evidence at the PCR hearing without objection. In addition, on June 1, 2018, Spicer had moved the post-conviction court to take judicial notice of its own records, and the post-conviction court granted the motion on June 21, 2018. We also note that this finding was one of the State's proposed findings adopted by the post-conviction court and that the State itself requested at the PCR hearing that the post-conviction court take judicial notice of the record of proceedings in the underlying case, a request that the post-conviction court granted.

[22]     We conclude that this finding is clearly erroneous. However, Spicer does not argue that this finding undermines the post-conviction court's legal conclusion that his counsel's performance was not deficient, and, as more fully explained below, we conclude that the post-conviction court's determination in that regard was not clearly erroneous. In addition, the Order denying relief contains several findings of fact regarding the underlying proceedings. Therefore, we

conclude that Spicer has failed to demonstrate that he was prejudiced by the post-conviction court's erroneous finding.[2]

### C. *Ineffective Assistance of Counsel*

[23] Spicer also argues that he received ineffective assistance because Guilty Plea Counsel provided him with inaccurate advice regarding the sentence Spicer would receive, advice that caused Spicer to plead guilty to the offense. We evaluate ineffective assistance of counsel claims under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a petitioner must show that 1) his counsel's performance was deficient based on prevailing professional norms; and 2) that the deficient performance prejudiced the defense. *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018) (citing *Strickland*, 466 U.S. at 687). In analyzing whether counsel's performance was deficient, we determine whether, upon consideration all of the circumstances, counsel's actions were reasonable under prevailing professional norms. *Id.* To demonstrate sufficient prejudice in the context of a defendant's decision to plead guilty based on the allegedly deficient advice of guilty plea counsel, the petitioner must show that there is a reasonable probability that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Bobadilla v. State*, 117 N.E.3d 1272, 1285 (Ind. 2019) (quoting *Jae Lee v. United States*, — U.S. —, 137 S.Ct. 1958, 1965, 198

---

[2] The remainder of Spicer's preliminary arguments are addressed by our resolution of his main arguments on appeal.

L.Ed.2d 476 (2017)). A petitioner's failure to satisfy either the 'performance' or the 'prejudice' prong of a *Strickland* analysis will cause an ineffective assistance of counsel claim to fail. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006).

[24] Here, Spicer claimed in his PCR that Guilty Plea Counsel's performance was deficient because he inaccurately advised Spicer that "he would not get any more time [than] the rest of the defendants, which was the main reason why Spicer pled guilty[.]" (PCR App. Vol. II, p. 29). Guilty Plea Counsel testified at the PCR hearing that he would not have guaranteed Spicer the outcome of any of the options for proceeding that he had discussed with Spicer. Guilty Plea Counsel more specifically testified that he would not have guaranteed Spicer that he would receive no more or less time than his co-defendants because "different factors come up, and it's always at the discretion of the [c]ourt." (PCR Tr. Vol. I, p. 27). The post-conviction court rejected Ruby's testimony as suspect and unpersuasive, and it ultimately rejected Spicer's allegation that Guilty Plea Counsel had advised him in the manner Spicer claimed. In light of Guilty Plea Counsel's testimony, we cannot say that the evidence "as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court[,]" which is our standard of review following the denial of a PCR. *See Hollowell*, 19 N.E.3d at 269. The post-conviction court's determination that Guilty Plea Counsel's performance

was not deficient was not clearly erroneous, and, therefore, we affirm the post-conviction court's denial of relief.[3]

# CONCLUSION

[25] Based on the foregoing, we conclude that Spicer's claim that the trial court abused its discretion when it denied his motion to withdraw his guilty plea is procedurally defaulted and that the post-conviction court's conclusion that he was not denied the effective assistance of counsel was not clearly erroneous.

[26] Affirmed.

[27] Baker, J. and Brown, J. concur

---

[3] Because Spicer has failed to establish any grounds for relief based upon his counsel's performance, we do not engage in any analysis of the prejudice prong of the *Strickland* analysis. *See Taylor*, 840 N.E.2d at 331.